# NO. 12-13-00072-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ANTHONY JOSEPH LARRY,* *APPELLANT* | § | *APPEAL FROM THE 8TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *RAINS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Anthony Joseph Larry appeals his conviction for possession of a controlled substance in an amount greater than or equal to 400 grams.[1] In his sole issue on appeal, he argues that the trial court abused its discretion when it overruled his motion for a mistrial based on statements made by the State during its argument to the jury on punishment. We affirm.

## BACKGROUND

Texas Department of Public Safety (DPS) Trooper Nick Moore conducted a traffic stop on a vehicle near Emory, Texas. As he completed the stop, another vehicle passed him. That vehicle was later determined to be driven by Appellant. Trooper Moore believed that Appellant failed to slow his vehicle to twenty miles per hour below the posted speed limit when passing an emergency vehicle with activated lights on a two lane road as required by law.[2]

Trooper Moore began to pursue Appellant. He caught up with Appellant and activated his emergency lights, signaling Appellant to pull over. Appellant continued to drive, and as he made a right turn, Trooper Moore saw a package rolling away from the vehicle. He did not

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (f) (West 2010).

[2] *See* TEX. TRANSP. CODE ANN. § 545.157(b)(2)(A) (West Supp. 2013).

actually see Appellant throw the package from his vehicle, but he believed that "due to the momentum of the package, it was very consistent with being dropped out or thrown out of the vehicle." Appellant eventually stopped the vehicle. But Trooper Moore thought it was suspicious that Appellant waited so long to stop, because he could have done so earlier at a well-lit store.[3]

When Trooper Moore approached the vehicle and asked for Appellant's license, he noticed the odor of marijuana coming from the vehicle. When exiting the vehicle, Appellant received a phone call and said it was his mother, but answered the phone stating, "Hello, what's going on, bro?" Also, he said he was travelling from Winnsboro, Texas, to Naples, Texas. However, Naples is east of Winnsboro, and Winnsboro is also approximately twenty-eight miles east of the traffic stop location. Based on the direction he was traveling, he appeared to be heading from Emory towards Winnsboro. Trooper Moore believed that these facts were suspicious. He returned to Appellant's vehicle and saw drug paraphernalia in the driver's seat. During a subsequent search of Appellant, Trooper Moore discovered marijuana, two cell phones, and $686.00 in cash, including $86.00 in $1.00 bills, in Appellant's pockets. At that time, Trooper Moore formally placed Appellant under arrest.

Trooper Moore radioed for assistance, and also requested that the assisting officer retrieve the bag he saw rolling on the road. Chief Deputy Brad Strawn of the Rains County Sheriff's Department arrived and retrieved the bag. After removing two packages taped together from the bag, Trooper Moore believed that the packages contained a large amount of narcotics. Karen Shumate, a DPS chemist, later tested the packages' contents and concluded that they contained a total of 1,475 grams of cocaine.

Appellant was indicted for possession of a controlled substance in an amount equal to or greater than 400 grams. He pleaded not guilty and the case proceeded to a jury trial. The jury found him guilty of the offense. During the punishment phase of the trial, neither side offered any evidence.

During argument, defense counsel told the jury that Appellant was young and had a daughter. He stated that the jurors could send a message to Appellant for transporting the cocaine through their county, but he implied that sentencing him for a long term of imprisonment would waste Appellant's life. In response, the State argued that the jury should consider not only

---

[3] We note that the traffic stop occurred at what appeared to be a rural area at night.

2

Appellant's life, but the lives of young child residents of Rains County. The State argued that each gram of cocaine possessed by Appellant could affect two children within Rains County, and that the jurors should imagine Appellant traveling through school districts within Rains County. Appellant objected that there was no evidence that Appellant had traveled near any schools when Trooper Moore stopped him. The trial court sustained the objection. Appellant requested that jury be instructed to disregard that portion of the State's argument. The trial court granted the request and instructed the jury to disregard those statements. Appellant then moved for a mistrial, but the trial court denied the request.

The jury subsequently sentenced Appellant to sixty years of imprisonment and assessed a $60,000.00 fine. This appeal followed.


## MISTRIAL

In his sole issue, Appellant contends that the trial court abused its discretion when it denied his motion for a mistrial during the State's jury argument on punishment.

### Standard of Review and Applicable Law

We review a trial court's ruling on an objection to jury argument under the abuse of discretion standard. *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). When a trial court has sustained a defendant's objection to improper jury argument and instructed the jury to disregard the argument, we also review whether the court's refusal to grant a mistrial was an abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011).

Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument exceeds the permissible bounds of these approved areas, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). When facts not supported by the record are interjected into argument, "such error is not reversible unless, in light of the record, the argument is extreme or manifestly improper." *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). The remarks "must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Wesbrook*, 29 S.W.3d at 115.

3

When determining whether improper jury argument during the punishment phase warrants a mistrial, we balance three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of the punishment assessed absent the misconduct (likelihood of same punishment being assessed). *Archie*, 221 S.W.3d at 700. Generally, instructions to the jury are sufficient to cure most improprieties that occur during trial, and we presume that a jury will follow the judge's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). A mistrial is an appropriate remedy only in extreme circumstances and is reserved for a narrow class of highly prejudicial and incurable errors. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

**Discussion**

Appellant contends that the trial court should have granted a mistrial when the State injected facts outside the record, namely that Appellant traveled through school districts or implied that Appellant was near a school at the time of his arrest.

Prior to the State's argument, defense counsel told the jury during his argument on punishment that

> now what we have to do in this part of it, which is the most important part, is make a decision about this man's life. But it's not all -- all about his life. It's about your life and your community, what we know about him. He's a --you can see he's a young man on the video. He said he had a daughter. And he's going through your community.
>
> . . . .
>
> But now we move to the point of what we're going to do with him, this young man, what we're going to do about this community so you can send a message, because that's the duty of the prosecutor. But it's your duty to make a Solomon's decision about whether or not we're going to waste this young man's life in prison for this offense with what we know about him.

The prosecutor argued in response as follows:

> This is your moment in history. When you hear them say, when are they going to do something about drugs, the "they" is now each one of you. And I'll just tell you, one gram, how many children?
>
> > ([Prosecutor] dumping sugar packets on counsel table.)
>
> Excuse me. How many children would that affect? Two . . . children per gram? That's what you got.
> > ([Prosecutor] dumping sugar packets on counsel table.)

4

[PROSECUTOR]: That's more than enough for every child in our community. You don't just affect the children. You affect the families. It's an epidemic. That's a lot. Ladies and gentlemen, Mark Twain once said, when you do the right thing, some people will be amazed, and the rest will be astonished. I'm telling you, send a message not just to Mr. Larry, bless his heart, but hate the crime. Love the sinner but hate the crime. This is the crime. Protect our children. He didn't stop here voluntarily that you know of. He came through here. He was headed on towards Winnsboro. Do you know where the school is on [Farm-to-Market Road] 515 in Winnsboro going through that school district? How many would he go through? Where would he be? Where would he start?

[DEFENSE COUNSEL]: I'd object. The prosecutor is going outside the record. There was nothing in the record about any school or anything like that.

[PROSECUTOR]: I'm asking for common knowledge, and it's just a logical deduction from the evidence that he went through school districts, et cetera.

[DEFENSE COUNSEL]: I would like a ruling from the Court.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Request the Court instruct the jury to disregard.

THE COURT: Ladies and gentlemen, you will disregard the last comment about driving through school districts. Don't consider it for any purpose.

[DEFENSE COUNSEL]: I respectfully move for mistrial, Judge.

THE COURT: That will be denied.

[PROSECUTOR]: Perhaps he didn't drive through a school district. Perhaps he just left your neighbor's house out there. He got stopped right out here off [Farm-to-Market Road] 515, didn't he? Maybe he hadn't been through a school district, maybe --

[DEFENSE COUNSEL]: Again, your Honor, I object to any reference to any schools or district, your Honor. It's -- the Court has already sustained my objection. I ask for the Court's ruling again.

THE COURT: Now he's making logical inferences, and I'll overrule that objection.

When viewed as a whole, these portions of the State's argument are best categorized as a response to an argument of defense counsel and a plea for law enforcement. Both are permissible bases for argument.

Even if the State's school district argument injected new facts and exceeded the bounds of permissible argument, a question we do not decide, the statements did not harm Appellant. The arguments of counsel on both sides were relatively short. Defense counsel anticipated that the State would make a plea for law enforcement, and attempted to address that first as part of his argument. The State attempted to respond to that argument. The conjecture by the State that Appellant traveled through a school district was not of such magnitude and frequency as to be

categorized as highly prejudicial. This is especially true in light of the fact that the trial court sustained Appellant's objection and instructed the jury that it "disregard the last comment about driving through school districts[, and to not] consider it for any purpose." We presume the jury followed the instruction. *Gamboa*, 296 S.W.3d at 580.

Finally, the same jury that found Appellant guilty also decided his punishment, and the evidence was overwhelming that Appellant intentionally or knowingly possessed a very large quantity of dangerous narcotics. Rains County is a rural county, and the jury heard testimony from Chief Deputy Strawn that he had never seized such a large quantity of cocaine within Rains County. Given these facts, irrespective of the comments by the State, it was foreseeable that Appellant would receive a lengthy term of imprisonment. Also, the minimum sentence was ten years because Appellant possessed more than 400 grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010). This is not one of the rare cases where the comment was so extreme or manifestly improper that it must have been a willful and calculated effort to deprive Appellant of a fair and impartial trial. *See Wesbrook*, 29 S.W.3d at 115; *Guidry*, 9 S.W.3d at 154.

Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 30, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 30, 2014**

**NO. 12-13-00072-CR**

**ANTHONY JOSEPH LARRY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 8th District Court

of Rains County, Texas (Tr.Ct.No. 5214)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed** and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*